# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In re the Adoption of<br><br>J.Z.D.<br><br>A person under the age of 18. | No. 51149-5-II<br><br><br>UNPUBLISHED OPINION |

MELNICK, P.J. — Based on a petition for adoption and termination of parental rights, the trial court terminated S.D.'s parental rights to J.Z.D. S.D. appeals the court's order, arguing the court terminated her parental rights without clear, cogent, and convincing evidence that S.D. failed to perform parental duties under circumstances showing a substantial lack of regard for her parental obligations. We affirm.

## FACTS[1]

### I. J.Z.D.'S EARLY YEARS

J.Z.D. was born on June 22, 2007.[2] At the time, S.D. was actively using crack cocaine and her life was unstable and chaotic. S.D. also had an outstanding warrant for her arrest. In August

---

[1] The facts derive primarily from the trial court's findings of fact, which are unchallenged and therefore verities on appeal. *In re Welfare of L.N.B.-L.,* 157 Wn. App. 215, 243, 237 P.3d 944 (2010).

[2] J.Z.D.'s father voluntarily terminated his parental rights and his termination is not the subject of this appeal.

2007, S.D. consented to J.Z.D. staying temporarily with K.R.[3] and T.B., while she took care of her legal issues. In December 2008, the trial court entered a nonparental custody decree, granting custody of J.Z.D. to K.R. and T.B. and restraining S.D.'s contact with J.Z.D.

## II.   S.D.'S INCARCERATION AND INITIAL PETITION FOR ADOPTION AND TERMINATION

S.D. continued to be involved in criminal activity and in September 2009, the State charged her with theft of a firearm and she received an 89 month prison sentence for the crime. S.D. and J.Z.D. had minimal contact while S.D. was in prison. S.D., however, arranged for J.Z.D. to receive a Christmas gift each year through the prison's Angel Tree gift program.

In December 2014, K.R. and T.B. filed a petition to adopt J.Z.D and terminate the parent child relationship between J.Z.D. and S.D. S.D. consented to the adoption and termination, but later revoked her consent before the trial court ruled on the petition.

## III.   AMENDED PETITION FOR ADOPTION AND TERMINATION

S.D. was released from custody on January 7, 2015. J.Z.D. continued to reside with K.R., T.B., and their biological children.

On March 17, 2016, K.R. and T.B. filed an amended petition for termination of S.D.'s parental rights and adoption of J.Z.D. S.D. filed a petition to modify the 2008 nonparental custody decree.

The trial court ordered a reunification meeting between S.D. and J.Z.D. and later granted S.D. supervised visitation with J.Z.D. Kate Lee, a visitation supervisor, supervised these visits. J.Z.D. expressed reluctance to participate in the visits and was concerned that S.D. would take him away from "his family." Clerk's Papers (CP) at 79. At a supervised visit in July 2017, J.Z.D. was

---

[3] K.R. and S.D.'s former husband are cousins. S.D.'s former husband is not the biological father of J.Z.D.

angry and did not want to participate in the visit. In light of the circumstances, visitation was terminated early. No visits have taken place since July 2017.

IV.     TERMINATION HEARING

The matter proceeded to a termination hearing. K.R. testified that J.Z.D. had been diagnosed with fetal alcohol syndrome and attention deficient hyperactivity disorder. J.Z.D. had a hard time focusing at school and took medication to help him.

Lee testified that S.D. asked questions about J.Z.D.'s interest, but did not ask for information about J.Z.D.'s physical health, mental health, or educational needs.

Joni Irvin, an adoption coordinator, testified that she met with J.Z.D. on multiple occasions and that J.Z.D. was clearly integrated into K.R. and T.B.'s family.

J.Z.D., who was 10 years old at the time of the hearing, also testified. He stated that S.D. was a stranger to him and he feared she would take him from his family. J.Z.D. expressed a desire for stability, and said that he would be less afraid if he could remain with his family.

S.D. testified. She knew that J.Z.D. had medical and behavioral issues for which he received treatment. S.D. acknowledged that she had not attempted to contact any medical or mental health professionals or any of J.Z.D.'s teachers. S.D. explained that she did not believe she could talk to J.Z.D.'s medical professionals or teachers because of a restraining provision in the nonparental custody decree.

S.D. had not voluntarily paid child support for J.Z.D. The only support she provided to J.Z.D. came from involuntarily withheld money from S.D.'s prison account and occasional paychecks. But, S.D. claimed she could now afford to add J.Z.D. to her household and maintain his participation in extracurricular activities.

V.     TRIAL COURT'S DECISION

The trial court entered the following relevant findings of fact:  S.D. had not provided a place for J.Z.D. to live since he was an infant nor had she supplied him with food, clothing, or medical care; S.D. had not made a voluntary child support payment; S.D. had not provided J.Z.D. with social and religious guidance other than being generally supportive of him and his interests during their limited visits; and J.Z.D. was integrated into K.R. and T.B.'s family and accepted them as his parents and J.Z.D. accepted  the other four children in their household as his siblings.

Based on its findings, the court concluded that termination of the parent-child relationship between J.Z.D. and S.D. was in J.Z.D.'s best interests.  The court further concluded, "[S.D.], the biological mother of [J.Z.D.], has failed to perform parental duties under circumstances showing a substantial lack of regard for her parental obligations."  CP at 83.

S.D. appeals.

ANALYSIS

S.D. argues that the findings do not demonstrate by clear, cogent and convincing evidence that she failed to perform parental duties under circumstances showing a substantial lack of regard for her parental obligations.  We disagree.

Since the trial court's findings of fact are verities on appeal, we look solely to whether the findings support the conclusions of law.  *In re Dependency of Schermer*, 161 Wn.2d 927, 940, 169 P.3d 452 (2007).  Conclusions of law are reviewed de novo.  *In re Welfare of L.N.B.-L.*, 157 Wn. App. 215, 243, 237 P.3d 944 (2010).

RCW 26.33.120 governs the termination of parental rights in the context of a petition for adoption.  *In re Adoption of McGee*, 86 Wn. App. 471, 473, 937 P.2d 622 (1997).  The parent-child relationship may be terminated:

4

> [U]pon a showing by clear, cogent, and convincing evidence that it is in the best interest of the child to terminate the relationship and that the parent has failed to perform parental duties under circumstances showing a substantial lack of regard for his or her parental obligations and is withholding consent to adoption contrary to the best interest of the child.

RCW 26.33.120(1).

The standard does not require balancing of the factors. *McGee*, 86 Wn. App. at 474. The threshold question is whether the "'parent has failed to perform parental duties under circumstances showing substantial lack of regard'" for parental obligations. *McGee*, 86 Wn. App. at 474 (quotation marks omitted) (quoting *In re Interests of H.J.P.*, 114 Wn2d 522, 528, 789 P.2d 96 (1990)). The court must resolve this question before it may consider the best interests of the child. *McGee*, 86 Wn. App. at 474. The court must find the parent unfit in order to terminate the parental rights of a non-consenting parent. *McGee*, 86 Wn. App. at 477.

Parental obligations entail, at a minimum, "'(1) express love and affection for the child; (2) express personal concern over the health, education and general well-being of the child; (3) the duty to supply the necessary food, clothing, and medical care; (4) the duty to provide adequate domicile; and, (5) the duty to furnish social and religious guidance.'" *H.J.P.*, 114 Wn.2d at 531 (quoting *In re Adoption of Lybbert*, 75 Wn.2d 671, 674, 453 P.2d 650 (1969)). While a parent's incarceration alone does not support termination of parental rights, the causes and frequency of imprisonment may be considered in determining a parent's fitness or unfitness. *In re Interest of Infant Child Skinner*, 97 Wn. App. 108, 120, 982 P.2d 670 (1999). Courts will not lightly terminate the natural parent-child relationship, and will strictly construe statutes providing for such termination; however, such consideration is subordinate to the moral, intellectual, and material welfare of the child. *Lybbert*, 75 Wn.2d at 674.

As listed above, the trial court here made a number of findings that demonstrated S.D.'s lack of regard for her parental obligations. Based on *H.J.P.*, 114 Wn.2d at 531, these unchallenged findings support the trial court's conclusion that "[S.D.], the biological mother of [J.Z.D.], has failed to perform parental duties under circumstances showing a substantial lack of regard for her parental obligations." CP at 83. While S.D. was incarcerated the majority of J.Z.D.'s life and she believed she could not contact J.Z.D.'s medical professionals or teachers due to the nonparental custody decree, S.D. still failed to perform her parental duties when not incarcerated. Thus, the trial court properly terminated S.D.'s parental rights to J.Z.D.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Melnick, P.J.

We concur:

Sutton, J.

Cruser, J.